May it please the court. My name is Zachary Oren and I represent Plaintiff Appellant Fred Burgess. With your permission, your honor, I'd like to reserve one minute for rebuttal. Yes, that's fine. I have three points I would like to discuss with the court today. The first is that there is a question of fact regarding the false arrest claim because there are material credibility or there were materially inconsistent statements given by Jaquan Pridgen and Riana Grady. As a result, those credibility determinations should be submitted to the jury. Why does that matter? Certainly, if the question was the guilt of your client in a criminal trial, those credibility questions would be essential. But the question is only whether there's probable cause, isn't it? Correct. That's absolutely correct, your honor, but it's very similar to the… So if a jury decided that these folks were in the end not credible, why would that undermine the officer's decision that there was enough there to warrant an arrest? Because the fact that they gave materially inconsistent statements to the prior officers, that in and of itself on that probable cause determination, those inconsistencies, the fact… Why is that so? First of all, the inconsistencies are not that great, right? In fact, the principal one is that one of the two witnesses, Mr. Pridgen, gave a different height, right? What else is inconsistent in his statement? The different height was more than half. It was a half a foot, your honor. Yeah, but he changed that the same night. So this theory that he consulted with his sister and they made up some story doesn't wash. Well, the other major inconsistency is whether or not the suspect had his face concealed, i.e., via face mask or having facial hair. And when the entire prosecution rests on the photographic arrays that were presented to these two witnesses, which originally said that they couldn't ID the suspect… But they picked this guy – they both separately picked your client out of the photo array, right? I can see that much, but only after… And is there any evidence that they knew him at all? There's – no. There is no evidence directly. Then how would the – why would the police be required to think that they had somehow concocted the identification of a person whose picture they saw, whose height was not listed anywhere on the photo spread, that, as far as I can see, they had no reason to pick out? Well, the reason is, is because they were a brother and sister. They were allowed to go home, and essentially they could have spoken to an individual… Are you saying they shouldn't have been allowed to go home that night? No, but I'm saying it's certainly – the opportunity for collusion was there with themselves and as well as… We're talking about collusion as far as the height goes, but not about the pictures. There could be no collusion on the pictures. Well, they could have colluded with an individual by the name of Quintel Young, and I briefed that extensively in my briefs. He was 6'2". He came out of Apartment 9. He originally gave inconsistent – he originally told the police he wasn't even on scene. Then later, he freely, openly comes in and says, yes, I was outside at the time of the shooting, and I retreated back into my apartment. Moreover… I'm talking about the photo array. Yes. The photo array, they picked out your client independently in separate occasions. Now, there couldn't have been any collusion as far as that was concerned. Collusion in the time period between the first interviews, then they go home. They're allowed to go home, and that's when the collusion could have occurred, and then they come back, and then they make the identification. How would they know what photos they were going to be shown? I mean, they couldn't decide in advance, we're going to pick out the same photo from the photo array. Well, Quintel Young could have clearly identified my client. Even assuming you're raising fair questions, all we are talking about here is a probable cause determination. There was a shooting which resulted in the death of the victim. Two witnesses separately pick out the plaintiff from photo arrays. Why isn't that probable cause? Again, I would rest on the fact that they gave materially inconsistent statements. I would also point out earlier, too, that Jaquan Pridgen, upon the initial interview, and Joseph even conceded this in his testimony, reviewed what they call the live scan database, which could have included, that's right in the record. It could have, but there's no evidence that it did. There's no reason to believe that it did. It's just entirely speculative. Again, all of this is terrific if you're trying to demonstrate reasonable doubt, and I assume that's why your client was ultimately acquitted, because these witnesses, given all of these problems, were not sufficient to persuade the jury beyond a reasonable doubt that he was the shooter, which is fine. But at the early stage of the investigation, why is this not enough to constitute probable cause, even assuming that the officers who made the decision to arrest knew all of these facts, which it's not clear that they did? Well, at that point, Your Honor, I would argue that based on these inconsistent statements, that's a credibility determination very similar to the Dufort case. These are really the only two witnesses the police have compared to all of the other witnesses, which totally exculpate the plaintiff, that at that point, there's a credibility question as to the probable cause analysis that should be submitted to a jury. What does that mean, assuming there was a credibility issue? Are the police officers not permitted to make an arrest? Are they not permitted to evaluate the credibility and decide whether there's enough to make an arrest? I mean, what is the point? Well, they could have put in for an arrest warrant. They could have went for a grand jury indictment. But to just do a summary field arrest on felony complaints, respectfully, I would argue was too aggressive at that point. Well, maybe I have a question about the malicious prosecution. Correct. Which is I'm having trouble understanding why the defendants that are sued here are responsible for the continued prosecution. What I see is this. After the grand jury indictment, the case gradually disintegrates. There is a perfectly reasonable argument that it was a misjudgment by the prosecutors to continue to trial in a case where maybe reasonable doubt was to be expected. But as far as I can see, there's not any evidence that Mr. DeJoseph and Mr. Lamberton knew about any of those things that caused the case to dissolve or that they said anything to the prosecutors to encourage the prosecutors to go forward. So why are they responsible for the continued prosecution? I would respectfully disagree with you on one point. It was whether or not Lamberton and Joseph continued and encouraged the prosecutors to enact. So tell me where the evidence is. I can tell you that in the record. It's at A37 and A38. That's Lamberton in his deposition. He was asked if he went up to ADA Matt Dorian that was prosecuting the case, and specifically he says that he wanted to testify. He felt plaintiff was guilty. He felt the jury got it wrong. He felt he should have been called as a witness during trial, and he wasn't. But he wasn't. I mean, the thing that's peculiar is he's saying after the fact, I still think your client is guilty, and I wish they had called me to testify because I had great stuff to say about him, which I'm not sure he did. So what does that say about what happened before? Well, under the Bermudez Second Circuit 2015 case, he encouraged ADA Dorian to continue the prosecution. Moreover, under that case – And is there any evidence that he was aware of any of the DNA evidence, for example? No. Both of the investigators, in fact Joseph, testifies at trial even after seeing the DNA evidence. But he won't change his statement. He still says he would arrest plaintiff. He testified. I just don't understand this. He says he would have made the same decision. Well, actually, as we just discussed, maybe he should have made the same decision at the time of the arrest. The question is, is he responsible for pursuing a prosecution in the absence of probable cause when it sounds like that decision is made by other people, prosecutors, lawyers who are immune, who know exactly what all the evidence is, when, to Joseph, does not? Well, I would just – I'm out of time, but I'd quickly respond and say that the fact that he tells the criminal jury that he's looked at all avenues of investigation, everything points to my client, and then he sees the exculpatory DNA evidence and refuses to change his statement and recant from that statement, and he never tells ADA Dorian that he's uncomfortable with the prosecution. So he's responsible for malicious prosecution because at the trial he gives testimony. I'm not sure – I'd have to look back at that to figure out why that's admissible, that he still, in his personal opinion, thinks the defendant is guilty? Yes, yeah, particularly when he was presented with the penumbra of exculpatory evidence. Thank you, Your Honor. There's nothing further. Thank you. We'll hear from the other side. Good morning. Good morning. May it please the Court. Christina D. Joseph for the Eppleese. I would just like to discuss the probable cause issues that are raised here, both with respect to the arrest and the subsequent prosecution up to the time of the indictment. First, with respect to the arrest, it is our position that the alleged prior inconsistent statement of the other witnesses isn't really that even inconsistent. Detective DeJoseph explained that during his deposition. He said he wasn't completely troubled by that. And furthermore, he was only confronted with that in the case of this litigation. He wasn't aware of it at the time that he made the arrest. At the time of his re-interview, he was questioned about that during his deposition, and he said specifically no. In fact, he offered the reason for that, which was that he wanted to remain independent in his investigation and in his questioning. The two suspects, again, identified the suspect, the appellant, as between 5'7 and 6'0 before they were allowed to go home that night. They described the same type of clothing. The following day, they both identified the suspect out of a non-suggestive photo array. There's been no allegation of a suggestive photo array, unlike the Dufort case. So they both picked this gentleman out of a lineup. So there's... It was a photo array. It wasn't a lineup. I apologize. A photo array. That's what I meant to say. So in the Dufort case, there was one eyewitness who positively identified a suspect. And that suspect was dressed in the same exact clothing. So the suggestion there and the argument that was held... The holding in that case was that the array itself was suggestive. There's been no suggestion here that there was anything wrong with the photo array. And we have two witnesses who both independently identified this person as the shooter. As for the argument that they weren't allowed to or they somehow didn't see the shooter's face, that is not in the record. I believe the two witnesses expressed some doubt that they might not be able to identify this person in a lineup or in a photo array. They weren't sure, but they never said words to the effect of, I would not be able to identify this person. This person's face was obstructed. I didn't see the face. I only saw the clothing, like in Dufort. These two people described a person. They said there may have been some covering over the bottom portion of this person's face, but there's been no statement to the effect of, I didn't see this person's face. As for a claim of collusion, all I've read in the brief and all I've heard here today is that it could have happened. They could have colluded. There's no proof. Those two witnesses were never deposed in this case. The point we were making earlier is that there's no way they could have, at least I can't imagine how they could have colluded on the actual picking out of the face. There may have been some discussion about height. Leave that aside. This is picking out the face in a photo array. Correct. That would have just been a very good guess on both their parts to pick the same person. It couldn't be collusion. It would be coincidence. Purely coincidence, if anything at all. Best case scenario. So I would assert then that there was certainly probable cause to make the arrest. As for probable cause with respect to the malicious prosecution claim, there's simply no evidence of that in terms of how the testimony went during the grand jury proceedings. I believe the case, the Manuel case, is cited by the appellant in that regard. Well, once you have an indictment, there's a presumption of probable cause. But before that, the only way I think one can succeed, really, is to show that it was kind of maliciousness on the part of the officers in the sense that they lied or fabricated evidence or did something of that sort. And there doesn't seem to be much of that here. I would agree with that. There's simply no evidence of that. That one report, the claim that that was somehow suppressed and not forwarded that would be otherwise exculpatory, there was questions asked about that, and there's been no proof in the record. There was never a motion to compel the production of that report. And there was just, the ADA was never deposed. There's been no proof beyond just the suggestion that, oh, well, the ADA apparently didn't receive it because I didn't receive it when I subpoenaed those materials, and then trying to pin that on Detective DeJoseph just doesn't hold water. So I will conclude at that point unless there's any questions. Thank you. Thank you. We'll hear at the rebuttal. I would just like to follow up on one of the questions, I believe, from Judge Lynch as far as the participation of the defendants in the malicious prosecution. Lamberton also, again, under the, I believe it's the Bermudez case, continued to investigate, and he re-interviewed or he found some new witnesses. This was the Citizen X and Citizen Y individuals, which even the district court discluded in its probable cause analysis and felt that they didn't even really address that because they were so unreliable. That's at footnote 14 of my. So he continued to work on the case? Correct. Because some supervisor told him, go interview this person, and he did? Well, yes, presumably, but he participated in the prosecution. He didn't. I don't understand this. An officer is sent to do some interviews in the course of a case. How does that make him responsible for the district attorney's decision not to drop the charges after exculpatory DNA evidence turns up? Because the fact he doesn't go to the prosecutors and say these witnesses are terribly unreliable, in my opinion, I believe we shouldn't be prosecuting them. Why would he say that? It wasn't his opinion. That they're terrible witnesses. They're not credible. If he was really acting maliciously, he would not have investigated. He would have just made stuff up. The fact that he was investigating suggests that he was acting in good faith. Well, the fact that they're Citizen X and Citizen Y's complaints, I have no way, and we tried in discovery, to verify who these individuals were, and they testified their depositions. They had no idea. They couldn't remember who they were. So for these reasons, thank you. Nothing further. Thank you for your point. We'll reserve decision.